UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
CHARLES D. AUSTIN
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7810
MDD_CDAChambers@mdd.uscourts.gov

September 26, 2025

LETTER TO ALL COUNSEL OF RECORD

Re:   *Gebril A. v. Frank Bisignano, Commissioner, Social Security Administration*[1]
      Civil No. 24-2479-CDA

Dear Counsel:

On August 26, 2024, Plaintiff Gebril A. ("Plaintiff") petitioned the Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2025). I have considered the record in this case (ECF 6) and the parties' briefs (ECFs 10, 13). I find that no hearing is necessary. *See* Loc. R. 105.6. The Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will REVERSE and REMAND the Commissioner's decision. This letter explains why.

I.   **PROCEDURAL BACKGROUND**

Plaintiff filed a Title XVI application for Supplemental Security Income ("SSI") benefits on February 19, 2015, alleging a disability onset date of February 19, 2015. Tr. 158-66. Plaintiff's claims were denied initially and on reconsideration. *Id.* at 96-102. On January 8, 2018, an Administrative Law Judge ("ALJ") held a hearing. *Id.* at 31-71. Following the hearing, on March 28, 2018, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[2] during the relevant time frame. *Id.* at 13-30. The Appeals Council ("AC") denied Plaintiff's request for review, *id.* at 1-7, so Plaintiff filed a complaint in this Court seeking review of the ALJ's decision, *id.* at 514. On January 31, 2020, Judge DiGirolamo remanded the case to the Commissioner for further administrative proceedings. *Id.* at 514-24. On June 5, 2020, the AC

---

[1] Plaintiff filed this case against Martin O'Malley, the Acting Commissioner of Social Security, on August 26, 2024. ECF 1. Frank Bisignano became the Commissioner of Social Security on May 7, 2025. Accordingly, Commissioner Bisignano has been substituted as this case's Defendant pursuant to Federal Rule of Civil Procedure 25(d). *See* Fed. R. Civ. P. 25(d).

[2] 42 U.S.C. §§ 301 et seq.

*Gebril A. v. Bisignano*
Civil No. 24-2479-CDA
September 26, 2025
Page 2

vacated the ALJ's decision and remanded Plaintiff's case for a new hearing.[3]  *Id.* at 527-31.  On January 22, 2021, an ALJ held a new hearing.  *Id.* at 487-513.  Following the hearing, on March 1, 2021, the ALJ again determined that Plaintiff was not disabled.  *Id.* at 468-86.  Because the AC did not assume jurisdiction over Plaintiff's case, the ALJ's decision constitutes the final, reviewable decision of the SSA.  *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000); *see also* 20 C.F.R. § 422.210(a); 20 C.F.R. § 416.1484(d); 20 C.F.R. § 404.984(d).

## II.    THE ALJ'S DECISION

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.  "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since February 19, 2015, the application date." Tr. 473.  At step two, the ALJ found that Plaintiff suffered from the severe impairments of "affective disorder, bipolar disorder, anxiety disorder, and attention-deficit hyperactivity disorder." *Id.*  The ALJ also determined that Plaintiff suffered from the non-severe impairments of "degenerative disc disease and obesity." *Id.*  At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id.* at 474.  Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: [Plaintiff] can perform simple, routine tasks, requiring no more than occasional changes in the work setting, occasional judgment or decision making, and with no production rate for pace of work (e.g. assembly line work); and [Plaintiff] can tolerate occasional interaction with the general public, co-workers, and supervisors.

*Id.* at 476.  The ALJ determined that Plaintiff can perform other jobs that exist in significant

---

[3] The AC noted that Plaintiff filed a second SSI application on November 19, 2019.  Tr. 529. Because the claim was duplicate of the claim in the first application, the AC directed the ALJ to "consolidate the claims files, associate the evidence, and issue a new decision on the consolidated claims."  *Id.*  The March 1, 2021 opinion therefore also renders a decision on her second SSI application.

*Gebril A. v. Bisignano*
Civil No. 24-2479-CDA
September 26, 2025
Page 3

numbers in the national economy. *Id.* at 480. Therefore, the ALJ concluded that Plaintiff was not disabled at any time since the application date, February 19, 2015. *Id.* at 481.

### III.     LEGAL STANDARD

The scope of the Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla . . . and somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

### IV.     ANALYSIS

Plaintiff challenges the ALJ's RFC as unsupported by substantial evidence for several reasons. Plaintiff maintains that the ALJ failed to (1) sufficiently address his moderate concentration, persistence, and pace ("CPP") limitation; (2) make specific findings on each mental functional area at step two; (3) build an accurate and logical bridge between the evidence and RFC; (4) adequately define a production pace limitation; (5) consider conflicting evidence; and (6) properly consider his subjective complaints. ECF 10, at 3-30. Defendant counters that the ALJ sufficiently addressed Plaintiff's moderate CPP limitation; made specific findings on each functional area at step two; properly considered Plaintiff's subjective complaints; and adequately relied on treatment records, testimony, and opinions to support the RFC conclusions. ECF 13, at 6-21. Because the Court finds Plaintiff's second argument persuasive, it begins and ends there.

The SSA follows a "special technique" when evaluating the severity of mental impairments. 20 C.F.R. § 404.1520a(a). To apply the technique, an ALJ rates a claimant's degree of limitation in four categories: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* at § 404.1520a(c)(3). Each area is rated using "the following five-point scale: None, mild, moderate, marked, and extreme. The last point on the scale represents a degree of limitation that is incompatible with the ability to do any gainful activity." *Id.* at § 404.1520a(c)(4). If the claimant's degrees of limitation are no more than "mild," the ALJ will generally conclude that the claimant's mental impairments are not severe.[4] *Id.* at § 404.1520a(d)(1).

---

[4] The application of the special technique is "not an RFC assessment[.]" Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *4 (July 2, 1996). An RFC assessment, by contrast, is "more

*Gebril A. v. Bisignano*
Civil No. 24-2479-CDA
September 26, 2025
Page 4

An ALJ makes proper usage of the technique when their decision "show[s] the significant history and medical findings considered and [] include[s] a specific finding as to the degree of limitation in each of the four functional areas." *Felton-Miller v. Astrue*, 459 Fed. App'x 226, 231 (4th Cir. 2011). It is not appropriate for the ALJ to "group[] the analysis of the [four] functional areas into one paragraph and [] not attribute specific analysis or conclusion to each particular functional area." *Paulette B. v. Kijakazi*, No. 20-3691-CBD, 2022 WL 888423, at *10 (D. Md. Mar. 24, 2022). Nor is it enough to simply discuss and summarize a claimant's mental impairments in the RFC assessment. *See, e.g., John B. v. Kijakazi*, No. 20-2363-TMD, 2021 WL 4750181, at *4 (D. Md. Oct. 12, 2021); *Wanda H. v. Saul*, No. 19-1349-TMD, 2021 WL 1087079, at *5 (D. Md. Mar. 22, 2021). That is because without more, the Court cannot "determine what medical evidence [the ALJ] relied on to make [their] determination for *each* of the functional areas.'" *John B.*, 2021 WL 4750181, at *4 (internal quotation marks and citation omitted) (first alteration and emphasis in original).

Instead, an ALJ must "narratively explain the reasons for each finding related to [a claimant]'s functional limitation and cite to the relevant medical evidence." *Wendy S. v. Saul*, No. 10-3441-GLS, 2020 WL 1443028, at *3 (D. Md. Mar. 23, 2020). If they fail to do so, "remand is warranted for an adequate application of the special technique." *Chandler v. Comm'r, Soc. Sec. Admin.*, No. 15-1408-SAG, 2016 WL 750549, at *2 (D. Md. Feb. 24, 2016); *see also Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 662 (4th Cir. 2017) ("[T]he weight of authority suggests that failure to properly document application of the special technique will rarely, if ever, be harmless because such a failure prevents, or at least substantially hinders, judicial review." (citations omitted)).

The Court finds that the ALJ failed to narratively explain the reasons for their findings related to Plaintiff's four mental functioning areas. As to the four mental functioning areas, the ALJ reached the following conclusion:

> In being able to understand, remember or apply information, which concerns learning, recalling, and using information to perform work activities, [Plaintiff] has a mild limitation. In [Plaintiff]'s ability to interact with others, the area that refers to [Plaintiff]'s capacity to interact independently, appropriately, and effectively with other individuals on a sustained basis, [Plaintiff] has a moderate limitation. With regard to [Plaintiff]'s ability to concentrate, persist, or maintain pace, the area that refers to [Plaintiff]'s ability to sustain focused attention and concentration sufficiently long enough to permit the timely and appropriate completion of tasks commonly found in work settings, [Plaintiff] has a moderate limitation. With regard to [Plaintiff]'s ability to adapt and/or manage herself, which refers to one's ability to regulate emotions, control behavior, and maintain well-being in a work setting, [Plaintiff] has no limitation. Because [Plaintiff]'s mental impairments do

---

detailed" and involves an itemization of the functions that are implicated when applying the special technique. *Id.*

> not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B' criteria are not satisfied.
>
> The above determination is supported by [Plaintiff]'s routine mental health treatment, the mental status examination findings, and [Plaintiff]'s significant activities of daily living. As expanded further below, [Plaintiff]'s treatment for his mental health issues has been consistently conservative during the relevant period, limited predominantly to prescription medication and some counseling with no evidence of any intensive in-patient treatment or hospitalizations due to mental health concerns. Additionally, these treatments appear to be effective in providing some relief to [Plaintiff]'s symptoms, as he indicated on multiple occasions that his symptoms are "managed" or "under control" when properly adhering to his medication regimen.
>
> Moreover, the psychological and mental status examinations from the relevant period do not support "marked" or "extreme" limitations in any functional category. Specifically, while [Plaintiff] occasionally display[ed] some issues with mood swings and focus, he was typically found to have normal speech, thought content, perception, intelligence, orientation, thought association, insight, judgment, memory, and no evidence of any suicidal or homicidal ideation. [Plaintiff] also had a Consultative Examination performed in June of 2015, where he knew the name of the current and former president and the complete date, day of the week, city, county, and state. Additionally, [Plaintiff] stated that "the medicines were really helping him" and while he displayed some issues with memory he exhibited a Full Scale IQ of 82, which is in the low average range. As for his activities of daily living, [Plaintiff] indicated few issues with personal care and stated that he prepares his own meals and performs household chores without encouragement. He indicated that [he] gets outside four or five days per week, is able to shop, pay bills, count change, handle a savings account, and use a checkbook/money orders. Moreover, he indicated that he has hobbies of reading and jogging, needs no reminders to go places, and is able to go out alone. At his hearing [Plaintiff] testifies that he has applied for jobs, has no issues getting dressed, preparing meals, cleaning, shopping, and reads.
>
> As such, the record indicates that despite his mental health diagnoses, his symptoms are generally controlled with treatment and his mental health symptoms of mood swings and focus issues result in, at most, moderate limitations to his ability to interact with others and his ability to concentrate, persist, and maintain pace. Therefore, because [Plaintiff]'s mental impairments do not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria are not satisfied.

Tr. 475-76. Later in the opinion, the ALJ stated that Plaintiff had "a history of mood swings and occasional issues with focus and memory in both his mental health records and Consultative Examination, supporting some limitations to his ability to interact with others and his ability to

concentrate, persist, and maintain pace." *Id.* at 478. The ALJ also found that a state agency psychological consultant overstated his marked limitations regarding Plaintiff's ability to interact with the public, perform tasks, and understand because the evidence shows that Plaintiff "goes out often," has "a Full Scale IQ of 82," and does not have significant cognitive deficits or many issues with insight or judgment. *Id.* at 479 (cleaned up).

Although the ALJ summarized the medical record, considered Plaintiff's mental impairments in the RFC assessment, and did not limit their analysis to a single paragraph, the Court is unable to discern how the ALJ ultimately made their determination regarding the degree of limitation on each of the four mental functioning areas. The ALJ identified several reasons for making their determination: (1) examinations revealing normal speech, thought content, perception, intelligence, orientation, thought association, insight, judgment, memory, and no evidence of any suicidal or homicidal ideation; (2) conservative treatment; (3) daily living activities; and (4) a Full Scale IQ of 82. Yet, the ALJ fails to attribute these reasons to any of the particular functional areas. And they attributed Plaintiff's history of mood swings and occasional issues with focus and memory to "some limitations" in "his ability to interact with others and his ability to concentrate, persist, and maintain pace." *Id.* at 478. But this does not explain how the ALJ found moderate limitations in both categories or how the ALJ found mild and no limitations in the other two categories.

The same can be said of the ALJ's reference to mental functioning areas in a medical opinion. The refusal to adopt Dr. Mendoza's marked limitations in Plaintiff's ability to interact and understand does not, without more, explain how the ALJ found mild and no limitations in these two categories but moderate limitations in the other two. As a result, it is unclear to the Court whether the ALJ considered any of these reasons pertinent to their analysis of one (or all) of the four functional areas. Because the ALJ fails to include a narrative discussion setting forth a specific finding as to the degree of limitation on each of the four functional areas, remand is appropriate in this case. On remand, the ALJ shall comply with the special technique in 20 C.F.R. § 404.1520a. *See Paulette B.*, 2022 WL 888423, at *10.

Because the case is being remanded on this basis, the Court need not address Plaintiff's other arguments. On remand, the ALJ is welcome to consider those arguments and adjust their opinion accordingly. Additionally, in remanding for further explanation, the Court expresses no opinion as to whether the ALJ's conclusion regarding Plaintiff's entitlement to benefits is correct.

*Gebril A. v. Bisignano*
Civil No. 24-2479-CDA
September 26, 2025
Page 7

### V.    CONCLUSION

For the reasons set forth herein, pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED and REMANDED. The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Charles D. Austin
United States Magistrate Judge